## No. 16,480.

JACKSON ET AL. *v.* CITY OF GLENWOOD SPRINGS.
(221 P. [2d] 1083)

Decided August 28, 1950.

Mr. M. J. MAYES, for plaintiffs in error.

Messrs. DARROW-MINCER-PETRE, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

This case involves the validity of an ordinance of the City of Glenwood Springs, the purpose of which is disclosed by the title, "An Ordinance Concerning Revenue and Imposing an Occupational Tax Upon Business, Professions and Occupations and to secure a Proper Distribution of the Burden of Taxes, and Providing Penalties for the Violation Thereof."

The case arose when plaintiffs in error, who were plaintiffs in the trial court and will hereinafter be so named, filed their complaint attacking the validity of this recently enacted ordinance of the City of Glenwood Springs. Their complaint was dismissed by the trial court, and they here seek reversal of the judgment.

Plaintiffs attack on two grounds: procedural and constitutional.

1. It is claimed the wrong procedure was followed in publishing the ordinance *only once* "at least ten days prior to enactment." It is agreed that the pertinent statute is section 244, chapter 163, '35 C.S.A., which reads: "No ordinance shall be adopted or passed by any city council of any city, in this state, unless the same has been previously introduced and read at a preceding regular meeting of such city council and published in full in one or two papers of general circulation published in such city at least ten days before its passage, and if there be no such paper or papers published in such city, then by posting copies thereof * * *."

Counsel for plaintiffs also contends that the following portion of section 6, chapter 130, '35 C.S.A., is pertinent: " * * * For the purpose of defining and clarifying ambiguities in the various statutes requiring the publication of legal notices and advertisements, but not for the purpose of increasing any period of publication or the number of publications required by any statute, the meaning and intent of any law governing the publica-

tion of legal notices and advertisements, except as otherwise expressly provided, is hereby declared to be as follows:"

\* \* \*

"Where publication for ten days is required, then publication once each week for three successive weeks in any daily, weekly, semi-weekly or tri-weekly newspaper shall be sufficient. \* \* \*."

It is argued that the ordinance should have been published once each week for three successive weeks under the latter section. We do not agree. The term "publication for ten days" denotes duration. The term "unless the same has been previously \* \* \* published in full" imports but one occurrence in the running of time. It might otherwise just as plausibly be argued that the ordinance should also be introduced and read several times, for it will be noted that the *unless* clause applies equally to (1) an introduction and reading of the ordinance and (2) its publication at least ten days before its passage. There is thus evident an intention that neither process should take place more than once.

The remaining specifications 2 to 8, inclusive, all involve the validity of the ordinance and will be discussed separately.

2. It is argued that the ordinance violates section 20, article II, of the Colorado Constitution reading, "That excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." Section 12 of the ordinance provides that, "Failure to comply with the terms of this ordinance by payment of taxes, filing a return and to otherwise comply with the terms of this ordinance, shall constitute an offense and a violation thereof. Every person violating this ordinance shall be fined not more than One Hundred dollars ($100.00) for each offense, and delinquency for each calendar month shall constitute a separate offense; but no conviction for such violation shall work

a revocation of any license issued to a defendant under the laws of the State of Colorado."

It is contended that it is "unreasonable that any businessman should be liable for $100 fine just because he failed to file his return or to otherwise comply with the terms of the ordinance, even though the tax was paid." It further is argued that provision for fines in a municipal ordinance is to secure performance, and that the city in this case has required a fine far in excess of the amount necessary to guarantee enforcement.

We cannot adopt the contention of the plaintiffs, that the fines here imposed are clearly excessive. We believe the amount of the fines provided in this ordinance are within the area of legislative discretion. *Cardillo v. People*, 26 Colo. 355, 58 Pac. 678; 36 C.J.S. 782, §2.

3. It is urged that the ordinance by making any sale —in the furtherance of business—taxable, and by the method of assessing the tax, contravenes the right to acquire property without undue interference and thus violates section 3, article II, of the Colorado Constitution, the pertinent portion of which reads: "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; * * *."

Counsel for plaintiffs relies upon *Willison v. Cooke*, 54 Colo. 320, 130 Pac. 828, 44 L.R.A., N.S. 1030. That case, however, involves the refusal to issue a building permit under a city ordinance and there is no question of taxation involved.

Counsel also quotes from *Banard & Miller v. Chicago*, 316 Ill. 519, 147 N.E. 384, 38 A.L.R. 1534, §8: "In the absence of statutory authority, a municipal corporation cannot impose a license fee on factories and workshops for the purpose of raising revenue." In Colorado, however, the legislature has specifically given municipalities the power of taxation (which has been

exercised in this ordinance) by section 89, chapter 163, '35 C.S.A., the pertinent portions of which read:

"The city council in cities of the second class [Glenwood Springs is such a city] and towns, and boards of trustees of towns, shall have the following additional powers, to-wit:

"First—To provide for the appointment of an inspector of buildings and to define his power and duty.

"Second—To license, regulate, and tax, subject to any law of the state now in force, or hereafter to be enacted, any and all lawful occupations, business places, amusements, or places of amusement."

When, therefore, counsel for plaintiffs argues that there should be a grant by the state legislature of power to the municipal corporation to impose a tax, such as the ordinance provides, it is apparent that the legislature in Colorado has specifically granted such power to the City of Glenwood Springs.

4. Counsel for plaintiffs urges very strenuously that the ordinance here under consideration violates the due process clause of the XIV amendment to the federal Constitution, and section 25, article II of the Colorado Constitution providing, "That no person shall be deprived of life, liberty or property, without due process of law." Reliance is placed upon *Williams v. City of Richmond*, 177 Va. 477, 14 S.E. (2d) 287, 134 A.L.R. 833. The ordinance under review in that case imposed a flat license tax of fifty dollars per annum on any person, firm, association, partnership or corporation engaged in any business, occupation or profession not subject to any special license tax. It was held that this violated the due process clause of the XIV Amendment, supra, the court saying: "Such a tax might result in wrecking the business of the newsboy and the street bootblack, while the burden would be comparatively light on the insurance and railroad executives. * * * It is clear that strict enforcement * * * would be a death blow to certain modest callings."

The Glenwood Springs ordinance, however, has no catch-all clause similar to that in the Richmond ordinance. Under the Glenwood Springs ordinance the tax is computed on the number of employees in each business or profession: "the sum of $20.00 for the first owner, partner, manager or employee; plus $6.00 for each additional owner, partner, manager or employee up to 9; plus $1.00 for each employee in excess of 9."

Section 4 reads: "An employee is declared to be exempt from the tax imposed by this ordinance."

Section 5 exempts "every person engaged in business and paying a license tax under a licensing Ordinance of the City of Glenwood Springs, or operating under a franchise."

Section 3 (b) also makes the tax inapplicable to the operation of any business exempt by federal or state law.

We do not believe that the Glenwood Springs ordinance comes under the objection that caused the Richmond ordinance to be held unconstitutional; nor do we believe that the ordinance can be considered to be a confiscatory, occupational tax upon legitimate business, as was held in the case of another ordinance in *National Linen Service Corp. v. Mayor of Milledgeville,* 51 Ga. App. 167, 179 S.E. 837.

6. Another related point involves the question as to whether the ordinance violates the equal protection clause of the XIV Amendment to the federal Constitution, and that part of amended section 6, article X of the Colorado Constitution which reads as follows: "All laws exempting from taxation, property other than that hereinbefore mentioned [property used exclusively for religious worship, schools, or for strictly charitable purposes, etc.], shall be void; * * *." We do not believe that the classification set out in the Glenwood Springs ordinance is arbitrary or capricious; nor do we agree that it rests upon no substantial or reasonable basis. In *In re Bruce,* 54 Cal. App. 280, 201 Pac. 789, an occupa-

tional or excise tax that was based upon the amount of capital in the business in the preceding year was upheld. Likewise, in *Clark v. Titusville*, 184 U.S. 329, 22 Sup. Ct. 382, 46 L. Ed. 569, an ordinance which divided the local merchants into classes according to the amount of their sales—the ordinance providing for the payment of different rates by the different classes—was declared valid. In *Bedford, State Treasurer v. Gamble-Skogmo, Inc.*, 104 Colo. 424, 91 P. (2d) 475, this court upheld a chain-store tax where the tax, as it affected each company, was graduated according to the number of stores operated. In the instant case, the tax is graduated upon the number of employees in each establishment. We cannot say that this method of classification contains any more elements of unfairness than the methods to which reference is made above, or that the classification was arbitrary or oppressive. We do not believe that the exemption of certain businesses from the operation of the ordinance would render it unconstitutional, since the businesses so exempted are either operating under a franchise or are otherwise taxed in lieu of the occupational tax. There is a provision in the ordinance that, in the event such other tax should be repealed or the franchise expire, then the business hitherto exempted from the ordinance would thereafter be taxed under it.

5. It also is contended that the ordinance is contrary to section 3, article X, of the Colorado Constitution providing that: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal." Our court has consistently held that this constitutional provision refers to the levy of ad volorem taxes upon property, and does not apply to taxes imposed upon privileges and occupations. See, *Denver City Railway Co. v. Denver*, 21 Colo. 350, 41 Pac. 826; *American Smelting & Refining Co. v.*

*People,* ex rel., 34 Colo. 240, 247, 82 Pac. 531; *Ard v. People,* 66 Colo. 480, 483, 182 Pac. 892; and *People v. Denver,* 84 Colo. 576, 580, 272 Pac. 629.

7. Plaintiffs in error urge that the ordinance violates clause 3, section 8, article I, of the United States Constitution, because it interferes with and constitutes an undue burden upon interstate commerce. We do not concur in this contention. Section 3 (c) of the ordinance reads: "That the tax herein provided is upon occupations and businesses in the performance of local functions and is not a tax upon those functions relating to Inter-State commerce." The expressed intent is thus not to interfere with interstate commerce, and there is no showing that the tax materially impedes it. It has been held that a levy is valid where it is nondiscriminatory in character and does not materially impede interstate commerce. *Sanford v. City of Clanton,* 31 Ala. App. 253, 15 So. (2d) 303. The instant case would seem to come under the rule laid down in *Bloxom v. Henneford,* 193 Wash. 540, 76 P. (2d) 586, that an occupational tax is valid which affects interstate commerce merely incidentally and where it is not imposed with the covert purpose of impairing constitutional rights.

The foregoing cases are but application of the principles laid down by the United States Supreme Court from the time of *Gibbons v. Ogden,* 9 Wheat. 1, 22 U.S. 1, 6 L. Ed. 23, to the more recent time of *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 Sup. Ct. 546, 82 L. Ed. 823, 115 A.L.R. 944, and *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33, 60 Sup. Ct. 388, 84 L. Ed. 565, 128 A.L.R. 176.

8. It finally is urged that the ordinance is unconstitutional for the reason that it is an unlawful attempt to usurp the right of the state of Colorado to license the professions and to impose an additional burden upon professional people. We recently considered this question in *Post v. City of Grand Junction,* 118 Colo. 434, 195 P. (2d) 958, in which we quoted with approval from

*Ex Parte Galusha,* 184 Cal. 697, 195 Pac. 406, as follows: " * * * The municipality, in imposing an occupational tax upon attorneys, is not interfering with state regulations, for it is not attempting to prescribe qualifications for attorneys different from or additional to those prescribed by the state. It is merely providing for an increase in its revenue by imposing a tax upon those who, by pursuing their profession within its limits, are deriving benefits from the advantages especially afforded by the city. The tax is levied upon the business of practicing law, rather than upon a person because he is an attorney at law. [citing authority] A license to practice does not carry with it exemption from taxation."

Our ruling accordingly is adverse to plaintiffs in error in respect to the eight points which they have raised.

Generally, it may be noted, as we said in *Post v. City of Grand Junction, supra:* "It is pertinent to observe that municipal authority, in the absence of constitutional restrictions, to impose occupational excise taxes purely for revenue for the support of its government, no longer is open to serious question. *Denver v. Hallett,* 34 Colo. 393, 398, 83 Pac. 1066; *Parsons v. People,* 32 Colo. 221, 76 Pac. 666; *American Smelting & Refining Co. v. People, ex rel.,* 34 Colo. 240, 82 Pac. 531; *Fort Collins v. Public Utilities Com.,* 69 Colo. 554, 556, 195 Pac. 1099; *Denver City Railway Co. v. Denver,* 21 Colo. 350, 41 Pac. 826; *Hollenbeck v. Denver,* 97 Colo. 370, 49 P. (2d) 435; *Interstate Business Exchange v. Denver,* 68 Colo. 318, 190 Pac. 508.

For the foregoing reasons, the judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD not participating.