Steven V. Berson Executive Director Department of Regulatory Agencies 1525 Sherman Street, Room 110 Denver, Colorado 80203
Dear Mr. Berson:
This opinion letter is in response to your February 9, 1988 Memorandum, in which you inquired about the legality of the collection of the 1 percent tax which Commerce City imposes on Mile High Kennel Club and which is subsequently withheld by Mile High Kennel Club from the return to the public.
QUESTION PRESENTED AND CONCLUSION
Your request for an Attorney General's Opinion presents the question:
Whether the law prohibits Mile High Kennel Club from paying a 1 percent Commerce City tax and the racetrack subsequently withholding this 1 percent fee from the return to the public?
Yes.
ANALYSIS
Prior to a 1981 amendment, section 12-60-111(2), C.R.S. (1973) had authorized the race meet licensee to collect the amount of any governmental tax levied in addition to the percentage and tax breaks allowed in section 12-60-111. This statute created an apparent inconsistency in the statute in that the following sentence provided that the tax, breaks, and license fees in the racing statutes were in lieu of all other license fees, privilege taxes or charges by other governmental agencies.
The General Assembly amended section 12-60-111, C.R.S. (1973), effective July 1, 1981, to restrict the imposition of a levy on a racing licensee solely to the federal government or any federal governmental agency. 1981 Colo. Sess. Laws 857. See
section 12-60-111(2)(a), C.R.S. (1985). Your opinion request concerns the propriety of Commerce City's continuing to impose a levy of a 1 percent tax on money wagered at Mile High Kennel Club and Mile High Kennel Club's continuing collection of the amount of the tax levied from wagers.
Construction of statutes should be guided by legislative intent, and courts should not interpret a statute to mean something other than what it expresses. E.g., Rancho Colorado,Inc. v. City of Broomfield, 196 Colo. 444, 586 P.2d 659
(1978). It is clear from the unambiguous amendment to section 12-60-111(2)(a) that only the federal government or its agencies, and not a municipality such as Commerce City, can impose taxes on race meet licensees; and that racetracks cannot collect from the money returned to the public any tax or charge which is levied by a non-federal governmental agency.
Whether or not Commerce City passed a law or an ordinance specifically addressing the collection of this tax upon Mile High Kennel Club, "[i]t is fundamental that an ordinance of a statutory city that is in conflict with a state law of general application is invalid." Lakewood Pawnbrokers, Inc. v. Cityof Lakewood, 183 Colo. 370, 517 P.2d 834, 836 (1974). Here the intent of the present statute is quite clear — only thefederal government may impose a tax on the licensee.
Additionally, in Colorado, only the state, and not a municipality, can impose an income tax. Colo. Const. art. X, §17. Mountain States Tel. Tel. Co. v. City of ColoradoSprings, 194 Colo. 404, 572 P.2d 834 (1977). InMountain States Tel. Tel. Co., the court distinguished an occupation tax (i.e., a tax on the privilege of doing business) from an income tax (i.e., a tax based upon gross revenues), by noting that the former type of tax "does not fluctuate from month to month depending upon the financial success or sales of the enterprise." Id. at 835. Thus, since the tax imposed upon Mile High Kennel Club is based upon the Mile High annual reports, it is an income tax which Commerce City has no authority to impose. MountainStates Tel. Tel. Co., supra.
You have informed me that Commerce City has been imposing the 1 percent tax since the summer of 1971 and that Mile High Kennel Club has been withholding that 1 percent from the return to the public since that date. Notwithstanding the fact that it has gone unnoticed that Commerce City has continued to impose and collect this tax even after the statutory amendment in 1981, it is illegal for it to continue doing so. Commerce City may not invoke even the doctrine of estoppel against the Colorado Racing Commission in order to permit it [Commerce City] to continue to impose the illegal tax. See generally, e.g.Berry v. American Liberty Ins. Co., 150 Colo. 499,375 P.2d 93 (1962).
SUMMARY
In rendering this opinion, I am not unmindful of its impact on Commerce City and Mile High Kennel Club. However, a thorough review of the constitutional and legislative history underlying this issue justifies no other legal conclusion.
Sincerely,
 DUANE WOODARD Attorney General
TAXATION AND REVENUE RACING, HORSE RACING, DOG MUNICIPAL GOVERNMENTS
Section 12-60-111(2), C.R.S. (1973) Section 12-61-111(2), C.R.S. (1985)
RACING EVENTS, DIV. OF
Present statutes prohibit a racetrack licensee from paying a municipal tax and having the track withhold that tax from the return to the public.