No. 24067.

PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO
AND SOUTHERN UNION GAS COMPANY *v.* CITY OF DURANGO,
A MUNICIPAL CORPORATION.

(469 P.2d 131)

Decided May 11, 1970.     Rehearing denied June 1, 1970.

554

Duke W. Dunbar, Attorney General, Robert Lee Kessler, Assistant, Warren D. Braucher, Assistant, John E. Archibold, Assistant, for plaintiff in error The Public Utilities Commission.

A. S. Greiner, James R. Wetherbee, John R. Barry, Akolt, Shepherd, Dick & Rovira, for plaintiff in error Southern Union Gas Company.

Emigh and Emigh, Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, Donald Macy, for defendant in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

There is only one issue presented by this writ of error: whether the City of Durango or the Public Utilities Commission has the jurisdiction to regulate rates charged by the Southern Union Gas Company for gas services to its customers in the City of Durango.

In 1949 Durango, acting as a home rule city under Article XX of the Colorado Constitution, adopted a franchise ordinance granting to the Southern Union Gas

Company the right to operate a gas plant in Durango and to supply gas service to the citizens of that city. The franchise, which was to be in effect for twenty-five years, set forth the rates to be charged for gas service and included provisions for changing those rates.

In 1954 the Colorado Constitution was amended by the adoption of Article XXV, which provides in part that all power to regulate rates of a public utility within a home rule city is vested in the Public Utilities Commission. In 1962 and 1963 the Southern Union Gas Company filed applications with the Public Utilities Commission for establishment of a rate base upon which charges for gas service could be fixed and for authority to change its rates for gas services in Durango. Durango protested the jurisdiction of the commission to proceed on the applications. Despite Durango's protestations, the commission held hearings and rendered decisions establishing a rate base and authorizing changes in the rates.

The City of Durango filed two complaints in the trial court attacking the decisions of the commission. These complaints were consolidated at trial. The trial judge found that as a home rule city acting under the authority of Article XX of the Colorado Constitution, the City of Durango had the power to suspend temporarily and for a reasonable period the power of the state to regulate the operations of the Southern Union Gas Company which the judge found to be entirely local and municipal in nature. He further found that the city had exercised this power by entering into the franchise agreement thereby vesting exclusive jurisdiction to regulate in the city council. The trial judge ordered that for the life of the franchise the commission was prohibited from taking any further action by way of regulation or fixing of rates for gas services supplied to the City of Durango by the Southern Union Gas Company.

It is necessary to discuss only one of the contentions of error set forth by the Public Utilities Commission and the Southern Union Gas Company. They argue that

the franchise did not suspend the power of the state to regulate and did not intend to do so. We agree and reverse the decision of the trial court.

■ Assuming, without deciding, that at the time the franchise was entered into Article XX of our constitution gave a home rule city the power to establish by contract the rates to be charged by a public service corporation for a definite term and thereby suspend during the life of the contract the governmental power of fixing and regulating rates, yet it has been noted by this Court that it must clearly and unmistakably appear that the contract by its terms suspends the power of the state to regulate and all doubts must be resolved in favor of the continuance of the power of the state to regulate. *Denver & S. P. Ry. Co. v. City of Englewood,* 62 Colo. 229, 161 P. 151.

In the franchise between the City of Durango and the Southern Union Gas Company, it is clearly contemplated that the rates specified by the franchise are not to remain absolute during the term of the franchise. Rather than set forth the rates as absolute and fixed for the entire period of the contract, Section III of the franchise provides that the specified rates shall remain in effect "unless and until changed in accordance with law." Section XIII of the franchise specifies in part:

"Any and all jurisdiction which the City may now or hereafter possess with respect to the Company in local or municipal matters may be exercised exclusively by the City Council subject only to the condition that any and all actions taken by it in the exercise of such jurisdiction shall be fair and reasonable and shall respect the Company's investment and rights."

On the basis of the language in the franchise quoted above, the trial judge determined that the burden of establishing by clear and unmistakable evidence the existence of a contract suspending the regulatory power of the state had been met. In support of this finding, the City of Durango argues that the franchise, by its terms, places exclusive jurisdiction to regulate rates for gas

services in the city, and the phrase "changed in accordance with law" used in Article III means in accordance with due process of law and is a limitation placed upon the City when exercising its exclusive jurisdiction. We do not agree.

It is a familiar rule of contract construction that a contract is to be construed as a whole and effect given, if possible, to its every provision. *Brown v. Brown,* 161 Colo. 67, 419 P.2d 444. If the meaning of the phrase "changed in accordance with law" which appears in Section III of the franchise is equated with procedural due process of law, then the language in Section XIII requiring fair and reasonable action by the City Council is merely repetitious.

We do not agree with a construction of the contract which reduces one clause to needless repetition, especially where there is a great burden placed upon the city to establish the existence of provisions in the contract which clearly and unmistakably are intended to suspend the power of the state to regulate, and when all doubts must be resolved in favor of the continuance of the power in the state to regulate. In our view, the phrase in Section III of the franchise specifying that the rates shall remain in effect "unless and until changed in accordance with law" means not in accordance with due process but in accordance with the statutory or constitutional law of the state relating to rate fixing authority and jurisdiction.

Such a construction finds support in the language used in Section XIII of the franchise. In that section the City Council is bound to act fairly in exercising whatever jurisdiction it "may now or hereafter possess with respect to the Company." Thus it was clearly anticipated that the jurisdictional powers of the City were subject to change. Due process requirements of fairness were properly imposed on any lawful exercise of jurisdiction by the City Council.

As we have already pointed out, the Colorado Constitution was amended in 1954 by the addition of

Article XXV wherein the people of this state by their ballot determined that all power to regulate rates of public utilities within a home rule city, as well as elsewhere in the state, should be vested in the Public Utilities Commission. Thus, under the provisions of the franchise, the law by which rate changes might be effected was changed in 1954. When the Southern Union Gas Company sought in 1962 and 1963 to change the gas rates, the law of this state was that jurisdiction to fix rates lay in the Public Utilities Commission and the City of Durango no longer had such jurisdiction.

The complaints filed by the City of Durango charged the Commission with having acted contrary to the evidence and not in accordance with the applicable statutes and decisions. Because of his ruling on the jurisdictional issue, the trial judge did not continue on in his order to answer the additional allegations made by the City.

The judgment is reversed and the cause remanded to the trial court for determination of the issues remaining.

MR. JUSTICE GROVES and MR. JUSTICE LEE dissenting.

MR. JUSTICE KELLEY specially concurring.

MR. JUSTICE GROVES dissenting:

I respectfully dissent.

With the exception of three customers, all of the operations of Southern Union Gas Company were inside the City of Durango. Therefore, in 1949 any contract with respect to franchise and rates and any regulation of rates was a local and municipal matter within the jurisdiction of Durango as a home rule city. *Spears v. Public Utilities Commission,* 100 Colo. 369, 67 P.2d 1029; and *City and County of Denver v. Mountain States Telephone & Telegraph Co.,* 67 Colo. 225, 184 P. 604.

The franchise provided that the jurisdiction which the city might thereafter exercise would be vested exclusively in the city council. Therefore, the contract term "unless and until changed in accordance with law" must mean

that the *city council* should act in accordance with law. To me, this is a contract which gave the city council exclusive jurisdiction over the regulation of rates throughout the franchise period.

The city has argued that application of Amendment XXV to this contract would violate Article I, § 10 of the United States Constitution which prohibits states from impairing the obligation of any contract. The company has responded that the city cannot raise such a defense against action taken by the state. It may be that the city is in no position to raise this defense. However, if abrogation of existing contracts was the intended result of this constitutional provision, I believe that such an intent would have been clearly expressed therein. In the absence of such expression, I must conclude that abrogation was not intended.

Mr. Justice Kelley specially concurring.

I concur in the opinion of Mr. Justice Pringle. However, in view of the dissenting opinion of Mr. Justice Groves, I feel compelled to add my personal views.

I might agree with the dissent but for Article XXV of the Colorado Constitution, which I cannot ignore. We are not here concerned with the impairment of a contract. We are concerned with delegated constitutional power: the "power to regulate the facilities, service and rates" of public utilities, "wheresoever situate or operating within the State of Colorado, whether within or without a home rule city * * *."

The contract interjected here is a franchise granted to the gas company permitting its use of the City's streets, which also fixed the rates to be charged at the outset and provided that such rates should remain in force "unless and until changed in accordance with law."

The "in accordance with law" provision recognizes the ultimate power of the People to change the procedure and the forum for rate regulation. The clause, "Any and all jurisdiction which the City may now or hereafter

possess with respect to the Company in local or municipal matters," is further recognition of the fact that the City could lose its jurisdiction as to rate regulation.

Regardless of whether they knowingly acknowledged it or not, the *power* the City had in 1949 was delegated to it by the *People* by virtue of Article XX. The parties contracted with the full knowledge that the *People*, the sovereign, could withdraw the *power*. They are deemed to have entered into the franchise agreement subject to the reserved police power of the state. *Zelinger v. Public Service Co.*, 164 Colo. 424, 435 P.2d 412. A change was made by Article XXV which is binding on the City.

When the People spoke, they ended all debate as to a "local and municipal" matter vis-a-vis "state-wide concern." The regulation of services and rates of public utilities were specifically made a matter of state-wide concern. See *People ex rel. v. Denver*, 125 Colo. 167, 243 P.2d 397.

The franchise, so far as it granted rights of user to the utility, is still in force. So far as the regulation of service and rates is concerned, the sovereign has transferred that power to the Public Utilities Commission.