LEDERMAN ENTERPRISES, INC., a Colorado corporation, d/b/a The Regency Inn, Inc., Plaintiff-Appellee and Cross-Appellant,

v.

ALLIED SOCIAL SCIENCE ASSOCIATIONS, Defendant-Appellant and Cross-Appellee.

· No. 82CA1177.

Colorado Court of Appeals, Div. III.

Feb. 28, 1985.

Rehearing Denied April 18, 1985.

Certiorari Denied Nov. 4, 1985.

Pred and Miller, Ronald S. Pred, Denver, for plaintiff-appellee and cross-appellant.

Jensen, Byrne, Parsons & Ruh, P.C., James C. Ruh, Denver, for defendant-appellant and cross-appellee.

STERNBERG, Judge.

The defendant, Allied Social Science Association (ASSA), appeals the judgment against it based on an alleged contract with the plaintiff, Lederman Enterprises, Inc., d/b/a The Regency Inn, Inc. (The Regency). The Regency cross-appeals. We reverse the judgment against ASSA.

ASSA, an unincorporated group of associations which meet together annually, contacted the Denver Convention and Visitors' Bureau in 1975 when ASSA was considering holding its 1980 convention in Denver. The Visitors' Bureau wrote to several Denver hotels, including The Regency, asking that the hotels commit to hold open a block of rooms in order to attract the ASSA convention to Denver. The Regency responded to the Visitors' Bureau, indicating it would hold 375 rooms open. This information was conveyed by the Bureau to ASSA.

Thereafter, ASSA and The Regency corresponded and, on March 19, 1980, the parties signed a document prepared by The Regency, entitled "Regency Inn-Meeting/Convention Contract." In May of 1980, ASSA mailed preregistration forms to its members informing them of the dif-

ferent Denver hotels available, and requesting the members to list their preferences. When the forms were returned by the members to ASSA, they were forwarded to the Visitors' Bureau which then assigned members of ASSA to the hotels in accordance with the preferences of the members.

Few of the 2,500 members who registered for the convention listed The Regency on their preference list, and none selected it as their first choice. Therefore, the Visitors' Bureau did not assign any members to The Regency. On July 21, 1980, realizing that no members would be making reservations at the Regency, the convention coordinator for ASSA wrote to the Regency stating that: "There is no need to continue to hold rooms for us ...."

The Regency filed suit against ASSA and its convention coordinator. Following a trial to the court, the action against the coordinator was dismissed, but judgment was entered against ASSA for damages under the liquidated damage clause of the contract. The court, however, declined to award attorney fees and interest as provided by the contract. ASSA appeals the award of damages, and The Regency cross-appeals, asserting the trial court erred in not awarding attorney fees and interest.

It is necessary to address only ASSA's first contention of error because it is dispositive. We agree with ASSA that The Regency's form "contract" entitled "Regency Inn—Meeting/Convention Contract" dated March 19, 1980, did not, as a matter of law, constitute a reservation of rooms by ASSA.

Construction of unambiguous contracts involves issues of law, not fact; thus, the trial court's interpretation is not binding on review. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 577 P.2d 748 (1978). Similarly, the determination of whether a contract is ambiguous is also a question of law. *People v. Johnson*, 618 P.2d 262 (Colo.1980). And, "it is a cardinal rule that an agreement ... must be construed as a whole and effect given, if possible, to its every provision." *Brown v. Brown*, 161 Colo. 67, 419 P.2d 444 (1966).

The "contract" between the parties specified that reservation cards had to be returned by August 4, 1980, and then stated:

"The Regency's cut-off policy calls for all unreserved rooms within your block to be released for sale 30 days prior to arrival. All reservations received thereafter will be accepted on a space available basis only. Should you wish to guarantee any unreserved rooms past the cut-off date, please advise us in writing ... [payment of] one nights deposit with each guest room reservation [is requested]. All reservations and agreements are made upon, and are subject to the rules and regulations of the Regency, and the following conditions:

Sleeping Room Reservations:

When making room reservations, please have your participants state which group or company they represent and which seminar they will be attending. This will ensure proper room rates and efficient handling.

We require a non-refundable deposit of first night's room rate with reservation, unless your organization guarantees payment for any 'no shows' in your group."

The gist of this "contract" is that, for an ASSA member to make a reservation at The Regency, a reservation card had to be used and had to be returned to the reservation manager of The Regency by August 4, 1980, accompanied by a deposit. To say that the document itself made reservations would make meaningless the need to return reservation cards.

Other provisions in the "contract" are also inconsistent with an interpretation that it constituted a reservation of rooms at The Regency. The several references to "unreserved rooms" within the block of rooms held by The Regency would be rendered meaningless by so holding. The provision that "all unreserved rooms within your block ... [will] be released 30 days prior to arrival" demonstrates that the rooms within the block had not been re-

served merely by ASSA's agreement to the contract's terms.

In our view, the "contract" merely imposed upon The Regency the obligation to make available, under certain conditions, a number of rooms to ASSA; it did not obligate ASSA to reserve any rooms. ASSA's only obligation was to mention The Regency as one of the hotels where members could obtain rooms. Only if further steps were taken by the members would rooms actually be reserved.

There being no reservation of rooms under the "contract," the later provisions pertaining to cancellation and liquidated damages never became relevant. Again, only if ASSA members had returned reservation cards would those provisions have come into play.

Because of our holding on this issue, it is unnecessary to address other contentions raised by ASSA and the cross-appeal of The Regency.

The judgment is reversed and the cause is remanded with directions to dismiss the complaint.

VAN CISE and METZGER, JJ., concur.